**CENTRAL SAVINGS BANK & TRUST CO. v. LIBERTY NAT. BANK et al.**

No. 15334—Opinion Filed Sept. 15, 1925.

1. **Fraudulent Conveyances — Purchase of Property by Mortgagee from Insolvent Debtor Void.**

Where the mortgagee of mortgaged property attempts to acquire title to the property covered by its mortgage and additional property not covered thereby from an insolvent debtor, said mortgagee having knowledge of the insolvency, the sale is fraudulent and void as to other creditors.

2. **Election of Remedies—Attempted Purchase by Mortgagee Void—Later Enforcement of Mortgage.**

Where a mortgagee, having a valid mortgage duly filed for record, which is constructive notice to all creditors, attempts to foreclose said mortgage by taking a bill of sale covering the mortgaged property, and other property, and said sale is held void for fraud, the mortgagee's title thereunder fails. Such action by the mortgagee is not an election of remedies which precludes an enforcement of the mortgage, for the reason that it is impossible to conceive of a right of election in a case where no such right existed. Held, further, that a court of equity will look through the form of the transaction to the substance thereof and will enforce the mortgage.

3. **Attachment — Validity — Necessity for Paying Mortgage Before Taking Mortgaged Property.**

An attaching creditor, under the provisions of sections 7660 to 7662, inclusive, Compiled Oklahoma Statutes 1921, must pay or tender to the mortgagee the amount of the mortgage debt and interest before the mortgaged property is so taken, and an attaching creditor who fails to comply with this provision cannot enforce an attachment as to the property covered by the mortgage. As to the property not covered by said mortgage, under the facts of the instant case, the attachment is valid and is sustained.

(Syllabus by Lyons, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Cimarron County; Arthur G. Sutton, Judge.

Action by the Central Savings Bank & Trust Company against J. B. Ratliff; Liberty National Bank and William A Strong, interveners. From the judgment, both the plaintiff and the interpleaders appeal. Affirmed.

I. E. Hill, Granby Hillyer, and C. E. Snyder, for plaintiff in error.

E. B. McMahan, Ross Rizley, and Cooper & Neel, for defendants in error (interpleaders).

Opinion by LYONS, C. This action was brought by the Central Savings Bank & Trust Company, with its principal place of business in the city of Denver, Colo., against J. B. Ratliff, defendant. The Liberty National Bank of Kansas City, Mo., as successor to the Commonwealth Loan Company, is an intervener, as is William A. Strong.

The controversy involves the possession and ownership of certain cattle which were owned by Mr. Ratliff, who was engaged in the cattle business on a moderately large scale. The case grows out of the unfortunate condition which caused a slump in the cattle market and brought another cattle man to financial ruin. Each creditor has apparently acted in good faith, so far as any actual intent to defraud any other creditor is concerned, but each one of them did his utmost to secure payment in full of all obligations. The assets are not sufficient to pay all the obligations; and, therefore, some creditors must suffer a loss, and it is the determination of the rights of the various creditors which is presented for our decision by this appeal.

Ratliff was indebted to the Commonwealth Loan Company (now the Liberty National Bank of Kansas City, Mo.) in the sum of $77,250. On October 10, 1921, he made notes to the bank for this sum and executed a chattel mortgage of the same date to secure the indebtedness. This mortgage covered 2,500 head of cattle, described with some particularity. According to the terms of the mortgage, 687 head of the cattle were located in the Duke pasture in Dallam county, Tex.; 642 head on the mortgagor's ranch in Cimarron county, Okla., and 1,180 head on the McKenzie ranch in Las Animas county, Colo. The brand of these cattle was the "frying pan" on the right hip.

When the indebtedness became due, and after it was past due and unpaid, the Liberty National Bank sent its agent to negotiate with Mr. Ratliff, and on November 22, 1922, a written agreement was entered into whereby it was agreed, in substance:

(1) That the defendant Ratliff was to gather all the cattle covered by the mortgage and execute a bill of sale for the brands covered therein; and (2) that the contract itself should be deemed a bill of sale until a proper one could be delivered at the time of the actual delivery of the cattle which was to be made at either Elkhart, Kan., Texline, Tex., or Stratford,

Tex.; (3) that Mrs. Ratliff should receive $1,000 in cash and all of the pincoed and undesirable calves, this payment of the gratuity to be made under the theory that the plan saved the expense of foreclosure; (4) that the expenses of the round-up and the delivery of the cattle should be borne by the bank, and that the notes and mortgage were to be surrendered to Ratliff when the cattle were delivered at the shipping point.

Mrs. Ratliff received the $1,000 in cash and about 97 calves. The bank received all the cattle branded with the "frying pan" brand, and some cattle of other brands. The bill of sale of November 22, 1922, describes approximately 1,800 head of cattle, some branded either on the right or left hip with the frying pan brand, and some branded "A."

There is some controversy as to the actual date of the delivery of the cattle, and this arises because the plaintiff brought attachment proceedings on November 27, 1922, and there is some controversy as to the modification of the arrangement as to the delivery of the cattle. It appears that on or after December 7th or 8th, Mr. Ratliff, in a conversation with Bob Strong and Boob Scott, instructed Boob Scott to shape up the herd, dip it, and do whatever necessary to deliver it, and that Scott said he would get in touch with the Kansas City bank and if agreeable to them, he would do it. The agreement, however, appears to relate to delivery to one Hughes; and Boob Scott, after finding out the bank would not agree to it, refused to make any delivery to Hughes. The cattle were eventually rounded up in Cimarron county, and some of the cattle attached while en route to the railroad station for shipment, and the remainder attached on the ranch. A Mr. Strong had been employed by the Liberty National Bank of Kansas City to oversee the gathering of the cattle, and he had purchased a tent and paraphernalia and utensils for the purpose of the round-up. Five of the boys who had been employed on the ranch for a considerable time worked as helpers in making the round-up. Mr. Ratliff's horses and his chuck wagon were used in gathering the cattle and the defendant, Mr. Ratliff, partly directed the men and the manner of handling the cattle, but Mr. Strong paid the bills. Everyone connected with the outfit in handling the cattle seemed to abide at the same place on the ranch. When the writs of attachment were issued and served by the sheriff of Cimarron county, or rather by a deputy about whose status as an officer there is some question, the

interpleader bank gave a redelivery bond and set up the execution and delivery of its mortgage and claimed a purchase of the cattle. Mr. Ratliff was insolvent on November 22, 1922, and this fact was known to the Liberty National Bank of Kansas City. The Liberty National Bank of Kansas City relied on its purchase of the mortgaged property, but after a preliminary decision of the cause, secured leave from the lower court to reopen and offered evidence to show that its mortgage had been duly filed and was constructive notice. The trial court found that this mortgage was constructive notice and was good against the plaintiff. The trial court further found that there was no sufficient transfer of possession under the so-called bill of sale to transfer the title, and that since there was no such actual and continued change of possession as is required under our law, to make the sale valid, the sale was fraudulent and void. The court held, further, that the contract made between Mrs. Ratliff and the intervener bank, by which $1,000 in money was paid and 200 head of calves were delivered and placed beyond the reach of other creditors, was fraudulent and void as to the plaintiff. The court further found that none of the cattle which were not branded with the frying pan brand were covered by the mortgage and that the attachment would be sustained as to them. The court further found that as to the cattle branded with the frying pan brand, the attachment must fail on the cattle in Cimarron county covered by the mortgage.

To sum up, the court rendered judgment for the plaintiff, the attaching creditor, on all cattle except those branded with the frying pan brand, and rendered judgment for the Liberty National Bank of Kansas City for all cattle in Cimarron county branded with the frying pan brand, and enforce said bank's mortgage as to said property. The court further found that the attaching creditor did not show by a preponderance of the evidence that the cattle sold to William A. Strong were calves of the cows of the frying pan brand described in the mortgage, and that Strong's title as to these calves was good.

The attachment creditor has appealed from this judgment and the Liberty National Bank of Kansas City, Mo., has filed a cross-appeal praying judgment for all of the cattle located in Cimarron county of which it claimed possession on November 22, 1922. The judgment of the Central Savings Bank

& Trust Company against Mr. Ratliff is not appealed from.

The principal contentions of the plaintiff in error, Central Savings Bank & Trust Company, go to the point that the intervener bank, Liberty National Bank of Kansas City, relied on a purchase of the cattle rather than on its chattel mortgage, and that it thereby elected its remedy and selected the ground on which it would stand and is estopped to seek another and inconsistent remedy under the well-known rule as to the election of remedies. The rule has been well stated in 15 Cyc. 262, as follows:

"An election once made, with knowledge of the facts, between coexisting remedial rights which are inconsistent, is irrevocable and conclusive, irrespective of intent, and constitutes an absolute bar to any action, suit or proceeding based upon a remedial right inconsistent with that asserted by the election, or to the maintenance of a defense founded on such inconsistent right."

However, the rule as to a mistake of remedy is also stated on the same page as follows:

"A person who prosecutes an action or suit based upon a remedial right which he erroneously supposes he has, and is defeated because of the error, has not made a conclusive election, and is not precluded from prosecuting an action or suit based upon an inconsistent remedial right."

An alleged choice of equitable remedy which is erroneous is "not an election but an hypothesis." Northern Assurance Co. v. Grand View Building Association, 203 U. S. 106, 108, 51 L. Ed. 109. It has been held that it is impossible to conceive of a right of election in a case where no such right existed. Friend v. Talcott, 228 U. S. 27, 37, 57 L. Ed. 718. In the Northern Assurance Case, supra, the earlier action at law was held not to be an election, because the facts there relied on could not be proved. In the instant case, the intervener was unable to prove the purchase by reason of a failure of proof as to change of possession. We think. therefore, there was no election of remedies and certainly no such an election as would preclude the plaintiff from relying on its chattel mortgage, of which the plaintiff in the attachment proceedings had constructive notice. See, also, Ahrens v. Commercial National Bank of Muskogee, 100 Okla. 250, 229 Pac. 237; Berry-Beall Dry Goods Co. v. Francis, 104 Okla. 81, 230 Pac. 496.

However we think the doctrine as to the election of remedies has no real force or application to the controversy. It is plain that a court of equity looking at the entire transaction must decide as the trial court did, that the intervener's rights were based on a loan of money and the taking of a chattel mortgage as security, and that the so-called purchase was merely an attempted foreclosure of said chattel mortage, and that the intervener bank should be regarded in as good a position in view of the filing and constructive notice given thereby of its mortgage as if it were attempting to foreclose its mortgage in the ordinary way, or were merely standing on said mortgage.

The appellant contends that the court committed error in reopening the case in November, 1923, to permit proof of the fact of the recording of the chattel mortgage, or the filing for record thereof, under which the interpleader, Liberty National Bank, claims. We think that the action of the court in this respect was within the sound discretion of the court, and that it would have been an abuse of discretion not to reopen the cause for the proof of this material fact. The following citations from this court hold that such action was proper and not an abuse of discretion: Insurance Company of State of Pennsylvania v. Harris, 49 Okla. 165, 152 Pac. 359; Federal Life Insurance Co. v. Whitehead, 73 Okla. 71, 174 Pac. 784; State Bank of Westfield v. Kiser, 46 Okla. 180, 148 Pac. 685; Bristow v. Carriger, 37 Okla. 736, 132 Pac. 1108. Therefore, the learned court committed no error in enforcing the mortgage.

It is contended by the intervener bank on its cross-appeal, first, that it had a sufficient possession of the purchased property, and that there had been a sufficient change of possession to convey title to it, and that it should be given title to all the cattle to which it claimed possession on the 22d day of November. Suffice it to say that the learned trial court heard the evidence and that his findings and conclusions of fact show a familiarity with the facts in this case and an experience with similar transactions, which is probably superior to that of any judge of the appellate court. We are therefore constrained to follow the findings of fact of the learned trial court in this particular. and to sustain his conclusions of law.

We think the learned trial court further resolved correctly the controversy as to the 39 "pincoed" calves delivered to Mrs. Ratliff, which she thereafter sold to Strong. It is our view therefore, that the learned trial court exercised the proper functions of a court of equity and by his judgment gave the various contending creditors and claim-

ants to this property exactly what was due to them under the facts and circumstances of this controversy.

The judgment of the trial court is therefore affirmed.

By the Court: It is so ordered.

Note.—See under (1) 27 C. J. p. 458, § 91. (2) 20 C. J. pp. 21, 22, 23, § 17; 21 C. J. p. 204, § 200. (3) 6 C. J. pp. 205, § 375, 231, § 436.